Gkeen, J.
delivered the opinion of the court.
The plaintiff in error was indicted in the Davidson Circuit Court for stealing Alfred, the slave of Caleb Harrison, and on his trial was found guilty by the jury. A motion was made for a new trial which was refused, and the prisoner appealed to this court.
It appeal’s from the evidence of John C. Pentecost, and the prosecutor Harrison, that on the night of the 12th of July, 1850, the said Pentecost learned that the prisoner had arranged to steal Alfred, and he sent him to his master to tell him what was going on, and Pentecost told Alfred to carry *321 out the agreement between himself and the prisoner, and to take his master’s horse from the stable and go to the prisoner on the Penitentiary road. The prosecutor at first ordered Alfred to go to the back yard, but upon Pentecost expostulating with him, and offering to manage the affair, the prosecutor consented, and himself and Charles Nichol went out on the Penitentiary turnpike road, were it was understood the prisoner and Alfred were to meet. Alfred mounted on a horse and rode on, Pentecost and several othei’s in his company following after. Alfred and the prisoner met on the Penitentiary turnpike and rode on together. Harrison, the master of Alfred, and Nichol were concealed beyond the Penitentiary, and as the prisoner and Alfred rode up, the former rode ahead of them in the road; whereupon, Alfred fled back home, and the prisoner was secured. Harrison enquired of the prisoner why he was stealing his negro. He said he was not trying to steal the boy. He was then asked what he was doing with him. To which he replied, it was then too late to talk about it.
This is substantially the evidence in the cause; and the question is, do these facts establish that a larceny was committed.
To constitute the transaction larceny, it must appear that the negro was in possession of the prisoner, and that such possession was obtained against the consent of the owner, so as to constitute the taking a trespass.
1. Was Alfred in the possession of the prisoner. Possession of a slave, may be, by having such control over him su-perinduced by fear, as to cause him to submit to the will of the possessor; or such submission may be the result of a free choice, brought about by sthe persuasion of the possessor. The true owner is regarded as always in the possession of his slave, if there be no actual possession by another.
Now, on the night in question, was Alfred in the possession of Harrison, his master, or of the prisoner? He was cer *322 tainly obeying the will of his master. It is true, he fell into the company of the prisoner, who doubtless had a felonious intent; but had the prisoner any control of him ? It is not pretended the prisoner employed any means of coercion; and certainly Alfred’s will was not in a state of submission to the prisoner. How then was he in his possession ? He had made a delusive appointment, as we may infer, to run off with the prisoner, and under the direction of Pentecost, and with the concurrence of his master, he placed himself in the company of the prisoner, as though he meant to fulfil the engagement ; but really, as an agent of his master, to assist him in detecting the contemplated villainy of the prisoner. During the whole evening, he was under the control of his master, and his agent Pentecost, and was performing• acts in obedience to their directions. He was not, then, out of his master’s possession.
2. But if the association of Alfred with the prisoner, on the turnpike were regarded as a possession by the prisoner, was sucKpossession against the consent and contrary to the will oPAhe owner ?
Nichol proves that Etarrison, the owner of Alfred, Pentecost, White, and the witness all met in front of Pentecost’s stable, and all talked over the plan for arresting the prisoner. As part of this plan, the witness and Harrison rode up Broad street, and then out on the Penitentiary turnpike and concealed themselves. Alfred was to go on and meet the prisoner, and Pentecost and his company were to bring up the rear, and cut off a retreat.
Now how can it be said, that Alfred was in a situation contrary to the will of his owner ? Surely, he was acting precisely as his owner wished, and as Pentecost, Harrison’s agent, had directed him.
In view of these considerations, we think this evidence is not sufficient to convict the prisoner of this larceny. Doubt *323 less the prisoner had a felonious intent, and deserves disgrace and punishment, but we must not permit a conviction to stand, which we think, is not supported by the law and the evidence, although a wicked man may escape punishment.
Reverse the judgment and remand the cause.